Omid E. Khalifeh, SBN 267340
Ariana Santoro, SBN 300767
Louise Jillian Paris, SBN 347801
**OMNI LEGAL GROUP**
2029 Century Park E, Suite 438
Los Angeles, California 90067
Phone:         310.276.6664
Facsimile:    310.305.1550
omid@omnilg.com
ariana@omnilg.com
jillian@omnilg.com

Attorneys for Plaintiff

THE BUREAU FASHION WEEK LLC

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BUREAU FASHION WEEK LLC, a South Carolina Limited Liability Company;<br><br>            Plaintiff,<br><br>        vs.<br><br>THE SOCIETY MODEL MANAGEMENT INC., a Delaware Corporation;<br><br>            Defendant. | Case No.: 2:24-cv-2784<br><br>**PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMAND** |

Plaintiff The Bureau Fashion Week LLC, by its undersigned attorneys, files this Complaint against Defendant, The Society Model Management Inc., for declaratory judgment. In support thereof, Plaintiff states and alleges as follows:

## INTRODUCTION

1. This is an action for declaratory judgment under the Anti-Cybersquatting Consumer Protection Act.

2. Plaintiff is the owner and registrant of the domain name "thesocietyfashionweek.com."

3. On March 18, 2024, a WIPO panel issued a decision in favor of the complainant, Defendant herein, ordering the transfer of the domain name registration for "thesocietyfashionweek.com" to Defendant.

4. Plaintiff brings this action under 15 U.S.C. § 1114(2)(D)(v) to contest the UDRP decision and prevent the improper transfer of the domain name registration.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction over this action as a request for federal declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has personal jurisdiction over Defendant because Defendant initiated an administrative proceeding against Plaintiff and the domain pursuant to the UDRP, in which Defendant willfully submitted itself to this Court's jurisdiction.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is situated in this

District, specifically the Domain, and Plaintiff has a place of business within this District.

## PARTIES

8. Plaintiff THE BUREAU FASHION WEEK LLC is a limited liability company duly organized and existing under the laws of the State of South Carolina, having an office and place of business at 3101 Ocean Park Blvd. Ste 100, Santa Monica, CA 90405. Plaintiff is known and renowned for organizing and producing major fashion week events globally.

9. Defendant, The Society Model Management Inc., a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in 55 Hudson Yards, 3rd Floor, New York, NY 10001. Defendant is a talent management and modeling agency.

## FACTUAL ALLEGATIONS

10. Plaintiff has been operating a reputable business known as The Bureau Fashion Week, which is renowned for organizing and producing major fashion week events globally. These events provide a significant platform in the fashion industry, primarily supporting emerging designers, independent labels, and creative fashion innovators.

11. The Plaintiff's use of the disputed domain name "thesocietyfashionweek.com" has been in connection with its bona fide offering of goods and services related to fashion event production long before the initiation of the dispute, underscoring the legitimacy of its operations and use of the disputed domain name.



12. On January 4, 2024, Defendant initiated a Uniform Domain-Name Dispute-Resolution Policy (UDRP) dispute against Plaintiff concerning the domain name "thesocietyfashionweek.com." This action was filed with the World Intellectual Property Organization (WIPO), asserting claims that challenge the Plaintiff's registration and use of the disputed domain name. *See* **EXHIBIT A**.

13. In the UDRP dispute, Defendant claims entitlement to the domain name "thesocietyfashionweek.com" based on their alleged rights in U.S. Trademark Registration No. 4459660 for "THE SOCIETY," which they assert is confusingly similar to the disputed domain name. The Complainant contends that the Plaintiff's use of "thesocietyfashionweek.com" infringes upon their trademark rights and constitutes bad faith registration and use under the criteria established by the UDRP.

14. On February 04, 2024, Plaintiff, through counsel, filed a response to the UDRP dispute. *See* **EXHIBIT B**.

15. On March 18, 2024, a WIPO panel issued a decision in favor of the complainant, Defendant herein, transferring the domain name registration for

"thesocietyfashionweek.com" to Defendant. A true and correct copy of the UDRP Decision is attached hereto as **EXHIBIT C**.

16. The UDRP decision transferring Plaintiff's domain name registration is improper because Plaintiff has legitimate interests and rights in the domain name "thesocietyfashionweek.com." The domain name has been used in good faith for nearly eight years to promote fashion week events, which is entirely unrelated to the Defendant's model management services. Plaintiff's registration and use of the disputed domain name were not aimed at disrupting Defendant's business or misleadingly diverting consumers but were genuinely intended to promote Plaintiff's legitimate business activities in the fashion industry.

17. Moreover, Defendant filed its UDRP complaint against Plaintiff with WIPO, and after limited briefing and no hearing, a panel decided the UDRP complaint in Defendant's favor and ordered the domain to be transferred to Defendant.

18. By its own terms, the UDRP contemplates judicial intervention and acknowledges that the judicial outcome will override a UDRP decision. *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 26 (1st Cir. 2001).

19. Federal law and the UDRP itself provide for the Court to independently resolve the dispute regarding the Domain *de novo* by determining the legality of the parties' actions under the ACPA. That is, the ACPA is separate and distinct from the UDRP, and the entire dispute between the parties is decided *de novo*.

20. The UDRP Decision provides bases for causes of action against Defendant but is otherwise irrelevant when the Court decides the merits of the claims. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003) ("The decision issuing from the UDRP Administrative Proceeding is relevant, therefore, only insofar as it triggered [the plaintiff's] right to sue under § 1114(2)(D)(v)").

21. By this action, Plaintiff will establish that it has not engaged in cyberpiracy or cybersquatting under the ACPA and that Plaintiff's use of the domain

in offering its services- and its registration and use of the domain to advertise its services – does not infringe upon Defendant's trademarks.

# CAUSE OF ACTION

## Declaration Under Anti-Cybersquatting Consumer Protection Act
## (15 U.S.C. § 1114(2)(D)(v))

22. Plaintiff incorporates and realleges by this reference paragraphs 1 through 21 above as if fully set forth herein.

23. An actual controversy has arisen and now exists, and if unresolved, will continue to exist between Plaintiff and Defendant regarding the rightful registration, use, and trafficking of the domain name "thesocietyfashionweek.com." This controversy not only touches upon the application of the Anti-Cybersquatting Consumer Protection Act (ACPA) and the determination of bad faith intent but also directly impacts Plaintiff's ability to maintain its online presence and associated Search Engine Optimization ("SEO") benefits, which are critical for the visibility and success of its business in the digital realm.

24. The ACPA provides relief to domain name registrants whose domain names have been wrongfully transferred in a UDRP proceeding initiated by overreaching trademark owners.

25. 15 U.S.C. § 1114(2)(D)(v) provides that: "A domain name registrant whose domain name has been suspended, disabled, or transferred under a [UDPR proceeding] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant."


26. To prevail under 15 U.S.C. § 1114(2)(D)(v), you must demonstrate several elements. First, you must be a domain name registrant. Second, your domain name must have been suspended, disabled, or transferred due to a complaint. Third, your registration or use of the domain name must not be unlawful. *See Black v. Irving Materials, Inc.*, 398 F. Supp. 3d 592.

27. Plaintiff registered the domain name through the domain name registrar GoDaddy on or around 2016.

28. On or around January 04, 2024, Defendant filed the UDRP Complaint with WIPO, in which Defendant wrongfully accused Plaintiff of using the domain in bad faith in order to have the domain transferred to Defendant. The WIPO panel issued a UDRP Decision on or around March 18, 2024, in which the panel ordered the domain to be transferred to Defendant. Defendant is the trademark owner who initiated the UDRP proceeding,

29. Plaintiff's registration and use of the domain is not unlawful under the ACPA. For Plaintiff to have violated the ACPA, it would require (1) that Plaintiff registered, trafficked in, or used the domain; (2) that the domain name is identical or confusingly similar to a protected trademark owned by Defendant; and (3) that Plaintiff acted with bad faith intent to profit from that mark. *See DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1219 (9th Cir. 2010) (citing 15 U.S.C. § 1125(d)).

30. Firstly, it is imperative to note that Plaintiff possesses legitimate rights in the domain name "thesocietyfashionweek.com," derived from its continuous and bona fide use for the promotion of The Bureau Fashion Week events. This domain name has been exclusively used to identify and promote Plaintiff's legitimate business activities, thereby establishing a name commonly used to identify Plaintiff within the fashion industry.

31. Second, the domain name "thesocietyfashionweek.com" is not identical or confusingly similar to a trademark in which the Defendant has rights. The Complainant's involvement in talent management and modeling does not extend to

organizing or producing fashion weeks, thus the term "fashion week" in the domain name describes the Plaintiff's business rather than Defendant's. This significant distinction underscores that the domain name accurately reflects Plaintiff's specialized business activities, establishing it as a name commonly used to identify Plaintiff within the fashion industry, thereby negating the claim of confusing similarity.

32. Third, under the ACPA, the cornerstone for establishing liability is the demonstration of bad faith intent to profit from a mark. As elucidated in *Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, the ACPA outlines non-exhaustive factors critical to assessing whether a defendant harbored bad faith intent to profit from the use of a domain name.

33. Plaintiff's prior use of the domain name has been exclusively in connection with the bona fide offering of goods and services, specifically, the organization and promotion of fashion week events aimed at supporting emerging designers and the broader fashion ecosystem. This use has been conducted in full transparency and without any intent to mislead, divert consumers, or tarnish the goodwill of any mark, including that of Defendant.

34. Plaintiff has also engaged in bona fide noncommercial or fair use of the mark in a site accessible under the domain name, with no evidence of intent to divert consumers from the mark owner's online location in a manner that could harm the goodwill represented by the mark. There has been no offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services.

35. Furthermore, Plaintiff has consistently provided accurate and transparent contact information in connection with the registration of the domain name and maintained such information, showcasing a clear departure from the patterns of conduct considered indicative of bad faith under the ACPA.

36. Critically, Plaintiff's actions and the registration of the domain name "thesocietyfashionweek.com" does not align with the conduct typically associated with cybersquatting, such as the registration or acquisition of multiple domain names known to be identical or confusingly similar to the distinctive or famous marks of others, without a legitimate purpose.

37. As noted in *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, it is clear that the ACPA's focus is on the direct actions of individuals or entities with a bad faith intent to profit from a trademark. Plaintiff's registration and use of the domain name have been carried out with a genuine intent to engage in lawful and constructive business activities, markedly distinct from the prohibited conduct under the ACPA.

38. Plaintiff never considered Defendant when selecting and registering the domain. Instead, Plaintiff chose the domain name "thesocietyfashionweek.com" independent from the influence of any other company, product, or trademark.

39. It is evident that Plaintiff's actions concerning the domain name "thesocietyfashionweek.com" do not meet the legal threshold for bad faith intent to profit. Consequently, Plaintiff contends that its registration, use, and promotion of the domain name have been conducted in good faith, meriting a declaratory judgment affirming Plaintiff's rights and dispelling any notions of bad faith intent.

40. A judicial declaration is necessary and appropriate at this time so that Plaintiff and Defendant may ascertain their rights and obligations with respect to the domain name "thesocietyfashionweek.com." Absent a determination now by the Court, Plaintiff faces not only ongoing uncertainty regarding its legal rights but also immediate and tangible harm to its business operations. This includes a potentially significant loss of SEO, which has been painstakingly built over nearly eight years. SEO is crucial for drawing attendees, designers, and sponsors to Plaintiff's events, and any disruption in Plaintiff's use of the domain name risks eroding its visibility in search engine results, directly harming its business and the promotional efforts for emerging designers in the fashion industry.

41. These events described herein warrant relief for Plaintiff under 15 U.S.C. § 1114(2)(D)(v), including injunctive relief to permanently return the "thesocietyfashionweek.com" domain to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

1. A declaration that Plaintiff's registration, use, and trafficking in the domain name "thesocietyfashionweek.com" do not constitute a violation of the Anti-Cybersquatting Consumer Protection Act (ACPA)

2. A declaration that Defendant is not entitled to transfer of the domain name registration for "thesocietyfashionweek.com."

3. Such other and further relief as the Court deems just and equitable.

RESPECTFULLY SUBMITTED this 5th day of April, 2024.

**OMNI LEGAL GROUP**

/s/ Omid E. Khalifeh
Omid E. Khalifeh
Ariana Santoro
Louise Jillian Paris
Attorneys for Plaintiff
The Bureau Fashion Week LLC